## �export 𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

# WASHINGTON AND OLD DOMINION RAILWAY V. ROYSTER GUANO COMPANY.

### January 24, 1918.

### Absent, Prentis, J.

1. RAILROADS—*Spur Track—Corporation Commission—Pleading.*— A petition was filed before the State Corporation Commission to compel the extension by the defendant railroad of an industrial spur track, which was originally constructed upon its right of way, but the extreme end of which, built on a wooden trestle, had been destroyed by fire and never rebuilt. It appeared from the evidence that the general public would be interested in the spur track, and that the track when constructed would not constitute merely a private switching facility for the sole benefit of the petitioner. The railroad had distinctly declined the offer made by the petitioner to bear the expense, and had refused to build the track upon any terms whatever. The prayer of the petition was that the railroad be required to extend and operate the siding, or that the petitioner be allowed to construct it and the railroad required to operate it.

   *Held:* That the order of the Commission requiring the work to be done entirely at the expense of the railroad, did not go outside of the issue as made up between the parties, even if it is conceded that the Commission, in proceedings of this character, can be held to strict rules of pleading as to the scope of the orders made by it.

2. RAILROADS.— *Spur Track — Corporation Commission — Interstate Commerce.*—Under the above state of facts, the railroad interposed the defense that the Commission had no jurisdiction because the shipments proposed by the petitioner were interstate commerce. As, however, it appeared that the spur track facility was used indiscriminately by the company both for interstate and intrastate commerce and the restoration of the track, instead of constituting a burden upon interstate commerce, would be in aid of interstate commerce, and enable the company to do both classes of business more efficiently, the

State Corporation Commission had jurisdiction over the complaint. If this defense be valid, then the commission is without jurisdiction to deal with any railway facility located in this State, because practically all railway facilities are used both for interstate and intrastate commerce, just as this industrial spur track is to be used.

3. Railroads—*Spur Track—Corporation Commission—Private Benefit.*—The petitioner constitutes a part of the public, and is entitled to facilities equal to those of his competitors in business, and the defendant company has no right to discriminate against its business by refusing to maintain the facility so long as it is needed to enable the defendant properly to discharge its public duties. The land was acquired by the railroad for the very purpose of maintaining this industrial spur track, and the evidence plainly indicated that it was necessary at the time it was constructed, and none the less necessary at this time. In refusing to rebuild and maintain this track in its entirety, the company plainly failed to discharge its duties.

4. Railroads — *Spur Track — Corporation Commission — Interstate Commerce.*—The rights of shippers and the duties of the public cannot be determined by the consideration that the revenues derived by the railroad on shipments of interstate commerce were less than those on shipments of intrastate commerce. To admit such a proposition is to admit that the railroad has the right to discriminate against interstate commerce. Therefore, it was no defense in the instant case, that the railroad's freight revenue derived from petitioner's proposed shipments from a point without the State, would be less than if the shipments were transported over its own line from a point within the State.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*W. J. Lambert* and *C. E. Nicol,* for the plaintiff in error.

*C. J. Collins,* for the defendant in error.

Kelly, J., delivered the opinion of the court.

The F. S. Royster Guano Company filed its petition be-
fore the State Corporation Commission to compel the ex-
tension by the Washington and Old Dominion Railway of a
certain side-track at Leesburg, Virginia. The Commission
entered an order granting the prayer of the petition, and
the Railway brings the case here for review. We have
maturely considered the record and entertain no doubt as
to the propriety or legality of the order.

The case was fully heard upon the petition, the demurrer
and answer thereto, the testimony of witnesses, and the
arguments and briefs of counsel; and the Commission,
after taking the controversy under advisement, announced
its decision in a written opinion which satisfactorily dis-
closes the facts, the contentions of the parties, and the rea-
sons and authorities upon which the decision is based. This
opinion, prepared by Prentis, chairman, and concurred in
by Commissioners Rhea and Wingfield, we shall adopt as
the opinion of this court. Counsel for the railway, while
still insisting here that the order was erroneous in all re-
spects, further earnestly contend before us that even if
the Commission was right in ordering the construction of
the side-track, the order improperly went beyond the scope
of the pleadings in requiring the work to be done entirely
at the expense of the railway, and in directing the exten-
sion for a greater distance than was indicated in the peti-
tion.

It does appear from the petition and from the evidence
that the Guano Company was willing to pay for grading
and preparing the roadbed on the right of way, the cost of
all necessary materials, and the cost of constructing and
maintaining the extension; and it further appears that the
literal prayer of the petition was for an extension of a
much shorter siding than that which was in terms desig-
nated in the order. It is readily manifest, however, upon
an examination of the record and of the opinion by the

Commission, that no error was committed, either in requiring the side-track to be constructed at the railway's expense, or in the specification of the length of that line.

As to the expense of building the siding, the Commission found from the evidence that the general public would be interested therein, and that the track when constructed would not constitute merely a private switching facility for the sole benefit of the Guano Company. The railway had distinctly declined the offer made by the Guano Company to bear the expense, and refused to build the track upon any terms whatever. The prayer of the petition was in the alternative, either (1) that the railway be required to extend and operate the siding, or (2) that the petitioner be allowed to construct it and the railway required to operate it. Therefore, if it were conceded that the Commission, in proceedings of this character, can be held to strict rules of pleading as to the scope of the orders made by it, the order in this case does not go outside of the issue as made up between the parties.

As to the claim of the railway that the Commission directed the construction of a longer line than the Guano Company requested, it is sufficient to say that the order does not in fact do so. The language of the order, construed in the light of the opinion and the evidence, very clearly granted substantially the relief in this respect which had been asked for, and refused by the railway, and which was understood by the parties to be directly in issue at the hearing before the Commission.

The opinion of the Commission, adopted by us, is as follows: ·

"As we understand the facts in this case, the Washington and Old Dominion Railway, as the lessee of the Southern Railway Company, controls and operates an industrial spur tract at Leesburg, which was originally constructed

by the lessor upon its right of way which was purchased for that purpose, for a distance of 46 feet, extending from the north side of South street and running thence to the south side of Loudoun (or Market) street, Leesburg.

"Shortly after the Washington and Old Dominion Railway took possession of the property under its lease, the extreme end of this industrial siding, say 150 feet thereof, built on a wooden trestle, was destroyed by fire and has never been rebuilt. Upon this siding there are now located at least six fertilizer warehouses, into which fertilizer which is shipped to Leesburg is unloaded and thence distributed to the local consumers. The track is also used by the defendant company as a public team or delivery track for persons desiring to receive their carload freight therefrom.

"The petitioner, the F. S. Royster Guano Company, a large manufacturer of guano, and proprietor of numerous factories, one of which is located in Baltimore, Maryland, desiring to extend its business, has purchased a piece of land located alongside of the right of way of the industrial spur track referred to, at its extreme end, where the track has, as above stated, been destroyed.

"It has filed its petition and asked that this Commission require the railroad company to rebuild the destroyed portion of the track so that it may transact its fertilizer business at Leesburg in the same way that other fertilizer dealers are transacting business there upon the uninjured portion of that industrial spur track and has offered to pay the entire expense of reconstructing it.

"Both in the petition and in the argument the petitioner has presented the question here involved as if the track, when reconstructed, would be its own private switching facility. This, we think, is a misconception, as will hereafter appear.

"The company has refused to rebuild the track, taking the position that inasmuch as the shipments from Balti-

51

more are interstate commerce this Commission has no jurisdiction over the complaint; that the extension would be for the private benefit of the petitioner in response to no public demand; that its freight revenue derived from such shipments would be less than if the fertilizer were transported over its own line from the Alexandria, Virginia, factories to Leesburg, and that the switch would be expensive to operate.

"We think that none of the defenses of the company should be sustained.

"It is perfectly apparent, and not denied, that the Southern Railway Company purchased, and the lessee, the defendant, holds the land, not for the purpose of constructing and operating a private switching facility, but for the purpose of constructing its own industrial spur track primarily for the use of the shippers owning warehouses contiguous thereto, and also for the use of the general public. Hence the burned trestle cannot be deemed to be a private facility. When it was originally constructed it was all operated in the company's interest and in order to enable it to serve the public generally, and if reconstructed it will continue to have this public character.

"First, as to the defense that this Commission has no jurisdiction because the shipments referred to constitute interstate commerce. We would say that the spur track facility is used indiscriminately by the company both for interstate and intrastate commerce, and the restoration of the track, instead of constituting a burden upon interstate commerce would be in aid of interstate commerce, and enable the company to do both classes of business more efficiently. If this defense be valid, then this Commission is without jurisdiction to deal with any railway facility located in this State, because practically all railway facilities are used both for interstate and intrastate commerce, just as this industrial spur track is to be used.

"Second, as to the claim that the extension is for the petitioner's private benefit and not for the public. We would say that the petitioner constitutes a part of the public, and is entitled to facilities equal to those of his competitors in business, and that the defendant company has no right to discriminate against its business by refusing to maintain the facility which existed at the time it became the lessee of the property so long as it is needed to enable the defendant properly to discharge its public duties. The land was acquired for the very purpose of maintaining this industrial spur track, and the evidence plainly indicates that it was necessary at the time its predecessor in title constructed it, and that it is none the less necessary at Leesburg at this time. In refusing to rebuild and maintain this track in its entirety, the company is plainly failing to discharge the duties which it undertook to perform at the time it leased the property from the Southern Railway Company.

"Third. Equally vain is the defense that the revenues derived by the company are less on shipments of fertilizer from Baltimore, Maryland, than they are on shipments of fertilizer from Alexandria, Virginia. The rights of the shippers and the duties of the public can never be determined by any such consideration. To admit the proposition is to admit that the company has the right to discriminate against interstate commerce.

"Meyer, Commissioner, in *'Railway Rates from Texas, Louisiana and Arkansas to Oklahoma and Missouri,'* 28 Interstate Commerce Commission Reports, page 474, in dealing with a question involving a similar principle, uses this language: 'The broad fundamental question involved in this case is whether the Santa Fe should be permitted to retain for itself the lumber market at points on its line for the benefit of producing points on its line to the exclusion of all others, except under a penalty of 3 1-2c per 100 pounds. We think this is an exercise of a carrier's

rate-making power far too arbitrary and too selfish to be permitted under the act. As a matter of sound policy under the law a carrier is not justified in attempting to restrict its traffic to movements between points on its own line."

"In *Indianapolis Freight Bureau* v. *C., C., C. & St. L. Ry. Co. and others*, 26 Interstate Commerce Commission Reports, page 58, Harlan, Commissioner, says: 'But we recall no case in which the Commission has recognized the right of a carrier to fix its rates to or from a given point on a higher level than they otherwise should be, in order to prevent one commodity from competing with another, or to keep the products of one community out of a territory; the wants of which may be fully supplied by another community. In our judgment the right to adjust rates on any such theory should not rest either in the carrier or in this Commission. The rails of a common carrier form a public highway over which the commerce of any community should be able freely to move on rates that are reasonable, all things considered, regardless of the consequences of its competition upon any other community.'

"If the rate on fertilizer from Baltimore to Leesburg, $2.00 per net ton, as against $1.10 per net ton from Alexandria, is inadequate, then proper effort should be made to have the rate increased. The defendant cannot lawfully refuse to perform the public service for which it was organized.

"Fourth. We think the claim that to increase the length of the switch 150 feet, so far from making it more expensive to operate, would substantially decrease the expense of operation. The evidence shows that the switch is greatly crowded, and the company itself claims that it is now necessary to move every car several times, and it must be apparent, under the conditions which here appear, that the longer the switch is, the more room there is for pushing

cars out of the way of those which it is desired to place at warehouses which are nearer to the main line. The evidence plainly shows that when the switch was longer the congestion was less.

"Upon the whole case, we are of opinion that it is the duty of the company to restore that portion of its industrial spur track to the condition in which it was before the track was destroyed, so as to relieve the congestion now existing, as well as for the purpose of affording the petitioner and the general public proper unloading facilities at Leesburg."

*Affirmed.*